2025-132, 2025-133

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

**In Re SAP America, Inc.**

*Petitioner.*

_____

On Petitions for Writs of Mandamus
to the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Nos. IPR2024-01495 and IPR2024-01496.

_____

**ACTING DIRECTOR'S RESPONSE TO PETITIONS FOR MANDAMUS**

BRAD HINSHELWOOD
LAURA E. MYRON
Attorneys, Appellate Staff

Civil Division, Room 7228
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4819

AMY J. NELSON
Acting Solicitor

ROBERT J. MCMANUS
Acting Deputy Solicitor

PETER J. SAWERT
FAHD H. PATEL
Associate Solicitors

U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the
U.S. Patent and Trademark Office*

July 18, 2025

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ................................................................1

BACKGROUND ........................................................................................4

ARGUMENT ............................................................................................9

I.  SAP FORFEITED ALL OF THE ARGUMENTS IN ITS MANDAMUS PETITION BY NOT RAISING THEM BEFORE THE AGENCY..............9

II. SAP'S STATUTORY COMPLAINTS ARE BARRED BY 35 U.S.C. § 314(d)......................................................................................11

III. SAP'S DISSATISFACTION WITH THE ACTING DIRECTOR'S EXERCISE OF HER INSTITUTION DISCRETION DOES NOT QUALIFY FOR A WRIT OF MANDAMUS...............................................14

    A.  Any constitutional challenges are meritless. .......................................14

        1.  SAP's due-process challenge is baseless. .................................15

        2.  SAP's separation-of powers argument has no merit.................21

    B.  SAP has alternate means of relief.........................................................23

    C.  Mandamus relief is inappropriate under the circumstances. ...............24

CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberico v. United States*,
    783 F.2d 1024 (Fed. Cir. 1986) ...........................................................17

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ................................................................................15

*Apple Inc. v. Fintiv, Inc.*,
    No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) .............5, 23

*Apple Inc. v. Vidal*,
    63 F.4th 1 (Fed. Cir. 2023) ...............................................12, 16, 20, 22

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
    941 F.3d 1320 (Fed. Cir. 2019) ........................................................10

*Barnhart v. Devine*,
    771 F.2d 1515 (D.C. Cir. 1985) .......................................................24

*Bloch v. Powell*,
    348 F.3d 1060 (D.C. Cir. 2003) .......................................................15

*Board of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972) .............................................................................15

*Bryan v. McDonald*,
    615 F. App'x 681 (Fed. Cir. 2015) .................................................24

*Celgene Corp. v. Peter*,
    931 F.3d 1342 (Fed. Cir. 2019) ......................................................16

*Cemex Inc. v. Dep't of the Interior*,
    560 F. Supp. 3d 268 (D.D.C. 2021) ...............................................13

*Cheney v. U.S. Dist. Ct. for D.C.*,
    542 U.S. 367 (2004) ...................................................................1, 24

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985)...................................................................................17

*Cuozzo Speed Techs. v. Commerce for Intellectual Property*,
  579 U.S. 261 (2016).....................................................................................4

*Dalton v. Specter*,
  511 U.S. 462 (1994)...................................................................................12

*In re DBC*,
  545 F.3d 1373 (Fed. Cir. 2008) .................................................................10

*In re Dominion Dealer Solutions, LLC*,
  749 F.3d 1379 (Fed. Cir. 2014) .................................................................14

*Fintiv*,
  IPR2024-01495 (P.T.A.B. March 12, 2025) .....................................8, 9, 10

*Food and Drug Administration v. Wages and White Lion Investments,
  L.L.C.*,
  145 S. Ct. 898 (2025)..................................................................................13

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005).....................................................................24

*Freytag v. C.I.R.*,
  501 U.S. 868 (1991) (Scalia, J., concurring) .............................................11

*Gen. Plastic Indus. Co., Ltd. v. Kaisha*,
  No. IPR2016–01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017)....................5

*Goldberg v. Kelly*,
  397 U.S. 254 (1970)...................................................................................16

*Interstate Commerce Commission v. Brotherhood of Locomotive
  Engineers*,
  482 U.S. 270 (1987)...................................................................................16

*Kentucky Dept. of Corrections v. Thompson*,
  490 U.S. 454 (1989)...................................................................................17

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994)..............................................................................18, 19

*McDonald v. Watt*,
      653 F.2d 1035 (5th Cir. 1981) ............................................................13

*Mexichem Fluor, Inc. v. Env't Prot. Agency*,
      866 F.3d 451 (D.C. Cir. 2017)..........................................................13

*Mylan Laby's Ltd. v. Janssen Pharmaceutica, N.V.*,
      989 F.3d 1375 (Fed. Cir. 2021) ..................................................*passim*

*Patlex Corp. v. Mossinghoff*,
      758 F.2d 594 (Fed. Cir. 1985) .........................................................16

*Princess Cruises v. United States*,
      397 F.3d 1358 (Fed. Cir. 2005) .......................................................18

*RideCo Inc. v. Via Transportation, Inc.*,
      No. IPR2022-00286 (P.T.A.B. June 28, 2022).................................6

*Rodriguez v. Peake*,
      511 F.3d 1147 (Fed. Cir. 2008) .......................................................18

*Sandin v. Conner*,
      515 U.S. 472 (1995)..........................................................................17

*Sotera Wireless, Inc. v. Masimo Corp.*,
      No. IPR2020-01019, 2020 WL 7049373 (P.T.A.B. Dec. 1, 2020) .....6

*Stern v. Marshall*,
      564 U.S. 462 (2011)..........................................................................11

*Thryv, Inc v. Click-To-Call Techs., LP*,
      590 U.S. 45 (2020)............................................................................11

*Town of Castle Rock, Colorado v. Gonzales*,
      545 U.S. 748 (2005)..........................................................................15

*United States v. Arthrex, Inc.*,
      594 U.S. 1 (2021)..............................................................................25

*Utility Air Regulatory Group v. E.P.A.*,
      573 U.S. 302 (2014)..........................................................................13

*Youngstown Sheet & Tube Co. v. Sawyer*,
  343 U.S. 579 (1952)............................................................................12

**Statutes**

35 U.S.C. § 314 .......................................................................*passim*

35 U.S.C. § 315 ...............................................................................12

35 U.S.C. § 315(e) .............................................................21, 22, 24

35 U.S.C. § 316 ...............................................................................22

35 U.S.C. § 318 .................................................................................4

35 U.S.C. § 319 .................................................................................4

**Other Authorities**

37 C.F.R. § 42.4(a).............................................................................5

## INTRODUCTION AND SUMMARY

Congress has committed the decision to institute an inter partes review (IPR) to the USPTO Director's discretion, and insulated the exercise of that discretion from any appeal.  Accordingly, this Court has made clear that the only circumstance in which it can review USPTO's denial of a petition to institute IPR is through a petition for a writ of mandamus, which may be brought solely based on colorable claims that USPTO has exercised its discretion in an unconstitutional manner.  And to obtain the "drastic and extraordinary" mandamus remedy, a petitioner must show that it has (1) a "clear and indisputable" right to relief; (2) no "alternative avenues of relief"; and (3) that "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 379-380 (2004).

Petitioner here, SAP America, Inc. (SAP), seeks that extraordinary remedy based on its dissatisfaction with the current Acting Director's decision to alter a former Director's guidance regarding the appropriate circumstances for institution of an IPR based upon parallel district court litigation.  SAP does not contest that it knew about and had multiple opportunities to brief the Acting Director's decision to exercise her discretion differently than had her predecessor.  Rather, it contends for the first time in this mandamus petition that withdrawing the former Director's guidance violates the Constitution and is inconsistent with the statutory design.  Such complaints do not even approach the very high bar for mandamus relief.

1

To begin, none of SAP's arguments were raised below despite SAP's two separate opportunities to brief the issue. Instead of asserting that the change in one of the agency's discretionary criteria created a problem of constitutional dimensions, SAP at that point claimed that the rescission had "little impact" on its pending petition. SAP's current complaints turn solely on matters entirely within USPTO's discretion, and thus capable of remedy through the administrative process. Having deprived the agency of any opportunity to redress the asserted problems SAP now raises, this Court should decline to take them up for the first time though mandamus review.

Second, much of SAP's argument is barred by 35 U.S.C. § 314(d), which precludes judicial review of claims that the USPTO's institution decisions violate a statute. SAP seeks to evade § 314(d), by creatively reframing alleged statutory violations as separation-of-powers problems and challenges under the Administrative Procedure Act's ("APA") standards for judicial review of agency action as "due process" arguments. Such challenges arise under statutes, not the Constitution, and are nonjusticiable in this mandamus action.

Finally, even apart from these defects, SAP's claim for relief falls far short of the mandamus standard. SAP's due-process complaints not only fail to establish a clear and indisputable right to relief, they are baseless. SAP has no entitlement to either IPR institution or any particular set of criteria the agency might use to

determine if it considers institution to be warranted—both matters that are entirely within the agency's discretion.  And even if SAP could establish the type of entitlement that might support a constitutionally protected liberty or property interest, SAP received the due-process requisites of notice and the opportunity to be heard; USPTO afforded SAP multiple opportunities to make its case for institution under the Acting Director's current guidance.  Furthermore, the rescission of prior guidance to the Patent Trial and Appeal Board (PTAB) on discretionary institution does not implicate the presumption against retroactivity.  And SAP's asserted reliance interest in the former Director's use of her discretion was entirely unreasonable.  SAP's separation-of-powers claims state, at most, statutory violations and are equally without merit; the statutory estoppel provision SAP cites places no limits on USPTO's discretion whether to institute IPR.

Nor can SAP satisfy the mandamus standard's other requirements.  At base, SAP is here seeking a chance to invalidate patent claims, claiming no independent harms from any asserted constitutional violations.  In that circumstance, SAP has several "alternative avenues of relief," as it remains free to avail itself of district court litigation or ex parte reexamination.

Finally, even apart from all other defects in its petition, SAP cannot show that mandamus relief would be appropriate.  Congress gave the USPTO Director wide latitude to manage AIA proceedings and insulated institution decisions from

3

appellate review. Each Director must balance requests for administrative review of patent claims against the other needs of the Office and the patent system more generally. The current Acting Director faces a significantly different situation than existed in 2022. The backlog and pendency of ex parte appeals that the PTAB must address is higher, the number of APJs is lower, and the Office is subject to a hiring freeze. SAP's request for a judicial order forcing the current politically accountable Acting Director to adhere to a prior Director's exercise of discretion, issued under different circumstances, is not an "appropriate" use of the writ.

## BACKGROUND

1. In creating inter partes review, Congress set out various statutory bars precluding the USPTO Director from instituting an IPR, but no set of circumstances in which she is required to do so. *See* 35 U.S.C. §§ 314(a), 315. And Congress further provided that although the agency's final written decision with respect to patentability is subject to appeal to this Court, *see id.* §§ 318, 319, the Director's institution decisions are "final and nonappealable," *id.* § 314(d). Accordingly, the Supreme Court and this Court have repeatedly made clear that USPTO is under "'no mandate to institute review'" and that USPTO's "'decision to deny a petition is a matter committed to the Patent Office's discretion.'" *Mylan Laboratories Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021) (quoting *Cuozzo Speed Techs. v. Commerce for Intellectual Property*, 579 U.S. 261, 273

4

Case: 25-132    Document: 39    Page: 11    Filed: 07/18/2025

(2016)).  In short, "[t]he Director is permitted, but never compelled, to institute an IPR," and "no petitioner has a right to … institution." *Id.*

2.  Given the Director's broad discretion over when to institute an IPR and the Director's decision to delegate her institution authority to the PTAB, *see* 37 C.F.R. § 42.4(a), Directors have set out various criteria for the PTAB to use in employing that delegated institution authority to address various possible concerns.  *See, e.g.*, *Gen. Plastic Indus. Co., Ltd. v. Kaisha*, No. IPR2016–01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) (precedential) (re discretionary factors for multiple IPR petitions).  For a number of years, Directors have instructed the PTAB to consider a non-exhaustive list of factors in addressing concerns about wasteful and duplicative redundancy between a requested IPR and parallel district court litigation, taking a "holistic view of whether efficiency and integrity of the system are best served by denying or instituting review." *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495, at *3 (P.T.A.B. Mar. 20, 2020) (precedential).

On June 21, 2022, then-Director Vidal issued a memorandum ("2022 Memo") setting out "interim" guidance regarding the way the PTAB should exercise her delegated discretion in applying these *Fintiv* factors while the USPTO considered "explor[ing] potential rulemaking on proposed approaches through an Advanced

Notice of Proposed Rulemaking." Appx25-27.[1] The 2022 Memo stated that it "applie[d] to all proceedings pending before the" USPTO, and would "remain in place until further notice." Appx33. The PTAB in fact applied the 2022 Memo's specific guidance on stipulations to at least 27 decisions to institute trial on IPR petitions that were already pending at the time the Memo issued. *See, e.g.*, *RideCo Inc. v. Via Transportation, Inc.*, No. IPR2022-00286, at 7-8 (P.T.A.B. June 28, 2022) (Paper 12).

Relevant here, the 2022 Memo directed the PTAB to "not discretionarily deny institution [of an IPR] in view of parallel district court litigation where a petitioner [stipulates] not to pursue in a parallel [district court] proceeding the same grounds [as in the petition] or any grounds that could have reasonably been raised" in the IPR petition, called a "*Sotera* stipulation." Appx27; *see Sotera Wireless, Inc. v. Masimo Corp.*, No. IPR2020-01019, 2020 WL 7049373, at *4 (P.T.A.B. Dec. 1, 2020) (precedential as to II.A).

On February 28, 2025, Vidal's successor, Acting Director Coke Stewart, rescinded the 2022 Memo ("the Rescission"), while explaining that the underlying precedential *Fintiv* and *Sotera* decisions continue to provide applicable guidance.

---

[1] Unless otherwise noted, the Acting Director cites to the Petition and Addendum Appx pages filed in Appeal No. 25-132 prior to consolidation of the appeals, and such cites are intended as representative of both Petitions and IPR records.

Appx81.   On March 24, 2025, Chief Administrative Patent Judge Scott Boalick,

issued a memorandum explaining how the Board should effectuate the Rescission.

Appx82-84.   The memorandum explained that "the Interim Procedure's rescission

applies to any case in which the Board has not issued an institution decision, or

where a request for rehearing or Director Review of an institution decision was filed

and remains pending."   Appx83.   It further noted that "[t]he Board will consider

timely requests for additional briefing on the application of the Interim Procedure's

recission on a case-by-case basis."   Appx83.   As Chief Judge Boalick explained, "a

timely-filed *Sotera* stipulation … is highly relevant, but will not be dispositive by

itself, and "[i]nstead, the Board will consider such a stipulation as part of its holistic

analysis under *Fintiv*."[2]

   3.   On October 1, 2024, SAP filed IPR petition IPR2024-01495.   Appx103.

When Acting Director Stewart rescinded the former Director's interim guidance,

SAP's IPR petitions were still pending and the Board had not yet issued institution

---

[2] Acting Director Stewart has updated the institution process in other ways as well,
providing for a new briefing process in which the Acting Director herself makes
institution decisions that involve discretionary denials, including the application of
the *Fintiv* factors and *Sotera* stipulations, in consultation with the PTAB.   *See*
Memorandum, Interim Processes for PTAB Workload Management (March 26,
2025),   *available   at*   https://www.uspto.gov/sites/default/files/documents
/InterimProcesses-PTABWorkloadMgmt-20250326.pdf.   Given that this new
process applies only "where the deadline for the patent owner to file a preliminary
response has not yet passed," *id.* at 3, the PTAB made the discretionary-denial
decision in this case.

decisions. Therefore, the PTAB granted both SAP and patent owner Cyandia supplemental briefing to respond to the rescission of the 2022 Memo and to address the *Fintiv* factors absent the former Director's guidance. Appx5; Appx103. In its supplemental brief, SAP contended that the rescission of the 2022 Memo "has little impact on this IPR," and did not raise any constitutional objections to the rescission or the application of *Fintiv* and *Sotera* absent the former Director's guidance about them. SAppx39-42 (Petitioner's Supplemental Brief Regarding *Fintiv*, IPR2024-01495 (P.T.A.B. March 12, 2025) (Paper 9)).

On April 7, 2025, having considered that briefing, the Board denied institution. Appx4-14; Appx103. The Board considered all six *Fintiv* factors, including SAP's *Sotera* stipulation. Appx8-14. The Board made a case-specific determination that given the nature of SAP's district-court challenges, SAP's *Sotera* stipulation "has limited practical effect in reducing the overlapping efforts here and in the Litigation," given that an IPR decision "on the patentability of the challenged claims based on the WebSphere printed publications" would not preclude SAP's invalidity defenses based on related system-based arguments. Appx11-12.

SAP then requested Director Review of the Board's decisions, and Cyandia filed a response. Appx103-104. SAP contended that the Board abused its discretion, misapplied *Sotera*, and failed to heed the governing guidance under the Rescission "that a *Sotera* stipulation is 'highly relevant.'" Appx92-96 (Petitioner's Request for

8

Director Review, IPR2024-01495, at 5-9 (April 17, 2025) (Paper 14)).  But SAP

nowhere asserted, as it argues here, that a *Sotera* stipulation "virtually guaranteed"

institution.  Pet. 1, 8, 9, 12.  SAP also did not claim that the Rescission should not

apply to its IPR petitions, whether as a matter of constitutional law or for any other

reason.  *See* Appx92-100.  The Acting Director denied SAP's requests for review.

Appx1-3; Appx104.

SAP then filed the instant Petition for a Writ of Mandamus ("Petition"),

asserting for the first time that the Acting Director's decision to replace her

predecessor's guidance regarding the *Fintiv* factors with her own violated due-

process and separation-of-powers principles and warranted this Court's intervention

through an extraordinary writ.  The Petition asks the Court to "order the Office to

apply" the former Director's 2022 guidance to its petition for inter partes review,

and "to not pressure SAP or any IPR petitioner" to forfeit certain invalidity grounds

in parallel district court litigation.  Pet. 3.

## ARGUMENT

## I.   SAP forfeited all of the arguments in its Mandamus Petition by not raising them before the agency.

SAP knew about the Acting Director's decision to exercise her broad

discretion regarding IPR institution differently than her predecessor, and it had

ample opportunities to raise its objections to that change in agency proceedings.  "It

is well-established that a party generally may not challenge an agency decision on a

basis that was not presented to the agency." *In re DBC*, 545 F.3d 1373, 1378 (Fed. Cir. 2008). This general rule applies to constitutional challenges. *Id.* Here, SAP could have raised its constitutional concerns either in the supplemental briefing the Board granted it after the change in guidance regarding application of the *Fintiv* factors, or in its petition for Director Review. SAP did neither. Rather than contending that the Acting Director's decision to rescind the 2022 Memo and revert to the prior understanding of *Fintiv* and *Sotera* created a constitutional infirmity, SAP argued that this change had "little impact on this IPR." SAppx40 (Petitioner's Supplemental Brief Regarding *Fintiv*, IPR2024-01495, at 1 (March 12, 2025) (Paper 9)). For this reason alone, the Court can and should deny the Petition.

Although the Court has discretion to consider arguments not raised below, it should decline to exercise it here. This Court has previously exercised such discretion where it concluded "the Board could not have corrected" the asserted problem, but it has refused to overlook such forfeiture where the PTAB "could have corrected the Constitutional infirmity" had a litigant raised the issue. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1327 (Fed. Cir. 2019) (discussing *DBC*, 545 F.3d at 1380). Here, the complaints SAP raises all concern the ways in which the Acting Director and the PTAB are exercising the Director's unfettered discretionary-denial authority—plainly matters the agency was capable of altering had it wished to obviate the constitutional challenges SAP now raises for the first

10

time in this Court.  If SAP thought that application of the Rescission in this case violated SAP's constitutional rights, it could have asked USPTO not to apply the Rescission.  The Court should not "encourage the practice of 'sandbagging'" by allowing parties to hold "reversible error" arguments in reserve until they know if "the outcome is unfavorable" under the "course" already being followed by the agency. *Freytag v. C.I.R.*, 501 U.S. 868, 895 (1991) (Scalia, J., concurring); *see also Stern v. Marshall*, 564 U.S. 462, 481-82 (2011) (courts should not allow constitutional arguments to be used for "sandbagging").

## II.    SAP's statutory complaints are barred by 35 U.S.C. § 314(d).

As the Supreme Court made clear in *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 53 (2020), 35 U.S.C. § 314(d)'s bar on appeals from institution decisions means that there is no judicial review of the USPTO's compliance with even clear statutory provisions regarding IPR institution.  *See id.* at 53-60.  This Court has left open the possibility that it could review through mandamus "the Director's exercise of [her] discretion to deny institution," but only to the extent that a mandamus petition raised "colorable constitutional claims."  *Mylan*, 989 F.3d at 1382.  But this Court has likewise made clear that "[g]iven the limits on … reviewability," ultra vires or other statutory arguments "cannot be a basis for granting [a] petition for mandamus" of a decision denying IPR institution.  *Id.* at 1382-83.

These principles foreclose SAP's mandamus petition insofar as it turns on SAP's claims regarding statutory requirements, including the APA. Whatever constitutional claims § 314(d) might permit litigants to raise through a mandamus petition, they do not include "run-of-the-mill statutory interpretation" questions reframed as constitutional violations. *Apple Inc. v. Vidal*, 63 F.4th 1, 13 (Fed. Cir. 2023). The Supreme Court has carefully distinguished "between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). The Constitution is implicated if executive officers rely on it as an independent source of authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), or if the officers rely on a statute that itself violates the Constitution, *see Dalton*, 511 U.S. at 473 & n.5. But claims alleging simply that an official has "exceeded his statutory authority are not 'constitutional' claims." *Id.* at 473.

Here, SAP's argument (Pet. 16-20) that the Acting Director's discretionary-denial guidance "violates the separation of powers because it is inconsistent with the" statutory estoppel provision is meritless, *see infra* III.A.2, *and* barred by § 314(d), because it is not a constitutional claim. SAP's disagreement with the agency's understanding of its institution discretion under 35 U.S.C. § 314(a) and the estoppel provision at 35 U.S.C. § 315(e) turns solely on claims that the agency is exceeding its statutory authority, not any contention that it is relying on inherent

constitutional authority or an unconstitutional statute.  The statutory nature of SAP's claims is underscored by its citations to cases like *Utility Air Regulatory Group v. E.P.A.*, 573 U.S. 302 (2014), which involved only statutory challenges.  *See id.* at 329 (finding only that "EPA overstepped its statutory authority," not any constitutional provisions, with overbroad interpretation of its governing statute).

Similarly, to the extent that SAP's due-process challenge to the denial of institution turns on APA-imposed strictures on agency action, it cannot proceed through this mandamus action.  Under the APA, courts applying the "well-worn arbitrary-and-capricious standard" can invalidate agency action that violates the "change-in-position doctrine."  *Food and Drug Administration v. Wages and White Lion Investments, L.L.C.*, 145 S. Ct. 898, 917 (2025).  SAP cites *Wages* and other cases decided under the APA and administrative law doctrines without acknowledging that this Court's limited mandamus review does not encompass such administrative-law strictures.  Pet. 8-15.[3]  This Court should decline to reach SAP's

---

[3] To the extent that SAP relies on cases decided under administrative-law doctrines regarding reliance interests, it errs.  *See, e.g.*, Pet. 15 (citing *McDonald v. Watt*, 653 F.2d 1035, 1045 (5th Cir. 1981) (not mentioning due process)).  Whatever due-process requirements might underlie such administrative-law doctrines, *see Cemex Inc. v. Dep't of the Interior*, 560 F. Supp. 3d 268, 281 (D.D.C. 2021), SAP fails to identify their contours.  And "due process" cases like *Mexichem Fluor, Inc. v. Env't Prot. Agency*, 866 F.3d 451, 462 (D.C. Cir. 2017)—which concerned agencies' inability to "impose civil or criminal penalties ... based on [a] manufacturer's past use" of a regulated chemical—are irrelevant.  There is no contention here that the USPTO is attaching penalties to any past conduct.

due-process claim insofar as it relies on APA, rather than constitutional, standards for evaluating agency action.

### III.   SAP's dissatisfaction with the Acting Director's exercise of her institution discretion does not qualify for a writ of mandamus.

To the extent that SAP attempts to identify a constitutional (rather than a statutory) problem with the PTAB applying the Acting Director's guidance—rather than her predecessor's—to the discretionary institution decision, it fails.  Any such challenge would be meritless under any standard, but it plainly does not meet the high bar for mandamus relief, which requires a petitioner to establish a "clear and indisputable" right to relief, demonstrate an absence of an "adequate alternative means to obtain" such relief, and satisfy the court "that the writ is appropriate under the circumstances."  *In re Dominion Dealer Solutions, LLC*, 749 F.3d 1379, 1381 (Fed. Cir. 2014) (citations omitted).

### A.   Any constitutional challenges are meritless.

SAP cannot establish a "clear and indisputable" constitutional violation warranting a writ of mandamus requiring the agency to revisit IPR institution with SAP's requested instructions; on the contrary, SAP's contentions that the USPTO violated due-process and separation-of-powers principles in exercising its discretion to deny IPR are entirely without merit.

14

### 1.    SAP's due-process challenge is baseless.

**a.**  To begin, it is far from clear that SAP has the requisite interest to support any sort of due-process challenge.  The Due Process Clause protects against the deprivation "of life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  The threshold "inquiry in every due process challenge is [therefore] whether the plaintiff has been deprived of a protected interest" in liberty or property. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

The Supreme Court has explained that "[t]o have a property interest in a benefit," a person must "have a legitimate claim of entitlement to it," not just "an abstract need or desire" or "a unilateral expectation of" the benefit.  *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  And "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.*; *see also, e.g.*, *Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C. Cir. 2003) ("[W]hen a statute leaves a benefit to the discretion of a government official, no protected property interest in that benefit can arise.") (collecting cases).

SAP claims a protected property interest in the guidance the USPTO employs in making institution decisions.  Pet. 11-12.  But both granting IPR and articulating guidance about institution criteria are entirely discretionary matters, and thus cannot support SAP's asserted property interest.  "The Director is permitted, but never

15

compelled, to institute an IPR. And no petitioner has a right to such institution." *Mylan*, 989 F.3d at 1382. And nothing in the statute requires the Director or her delegees to explain the decision whether to institute an IPR. To the contrary, "[n]othing in the unreviewability principle [of § 314(d)], … turns on whether the Director has provided an explanation." *Vidal*, 63 F.4th at 13. "[T]he Supreme Court has rejected the notion that 'if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable.'" *Id.* (quoting *Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987)). SAP's many citations to cases where statutes or rules created some entitlement supporting a property interest are thus inapposite. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); *cf. Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 605 (Fed. Cir. 1985) ("[A] procedure created by statute to govern [patent] litigation" is not "a property right subject to the protection of the Constitution.").[4]

SAP also briefly asserts (Pet. 11-12) that it has a "liberty interest" in USPTO guidance limiting the agency's discretion. The only cases SAP cite for this proposition involve the potential for nondiscretionary rules to create "enforceable

---

[4] For similar reasons, this Court has explained that "IPRs do not differ significantly enough from … [other] mechanisms for reevaluating the validity of issued patents to constitute a Fifth Amendment taking." *Celgene Corp. v. Peter*, 931 F.3d 1342, 1358 (Fed. Cir. 2019). "[T]he differences between IPRs and district court proceedings … do not create a constitutional issue." *Id.* at 1362.

liberty interests in the prison setting." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 461 (1989); Pet. 11-12. Even had the approach to determining such interests not been later "abandon[ed]," *Sandin v. Conner*, 515 U.S. 472, 483 & n.5 (1995), these cases do not suggest that limits on official discretion outside the carceral context create liberty interests.

**b.** Even assuming SAP could establish some property or liberty interest here, it could not make out a due-process violation. "Once a property interest is shown, all due process requires is notice and an opportunity to be heard." *Alberico v. United States*, 783 F.2d 1024, 1027 (Fed. Cir. 1986) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Here, the USPTO's publication of the change to its discretionary criteria gave SAP notice, and SAP had two separate briefing opportunities to be heard about the effects of that change and urge institution in light of it. *See supra* pp. 8-9. SAP filed a Supplemental Brief on the *Fintiv* factors after the USPTO rescinded the 2022 Memo. Appx5; Appx103; Appx25; SAppx39. SAP also addressed the *Fintiv* factors, post-rescission, in Petitioner's Request for Director Review. Appx85-86. Having heard SAP, the PTAB and the Director denied institution. Appx1-2. The relief SAP wants is not to be heard—because it was heard—but for USPTO to apply the 2022 Memo and reach a different outcome. Pet. 3. The Due Process Clause requires no such remedy, and certainly does not guarantee SAP a specific outcome to its hearing.

**c.** Finally, SAP's invocation of retroactivity and reliance principles fails. A "retroactive" rule is one that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994). And this Court has made clear that the retroactivity analysis examines "not merely whether a change has occurred," but "'the *nature and extent* of the change in the law,'" as well as "'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008) (quoting *Princess Cruises v. United States*, 397 F.3d 1358, 1362-63 (Fed. Cir. 2005) and *Landgraf*, 511 U.S. at 270)).[5]

Here, the application of the Acting Director's guidance to SAP's IPR petition did not affect any of SAP's rights, because an IPR petitioner never has a right to institution, let alone the application of any particular set of discretionary criteria regarding institution. The statute contains no such criteria and the USPTO is "never

---

[5] SAP does not explain its assumption that any "retroactive" rule violates the Constitution. Although "[t]he Due Process Clause … protects the interests in fair notice and repose that may be compromised by retroactive legislation," the Supreme Court has explained that retroactive rules "often serve entirely benign and legitimate purposes," such as "to give comprehensive effect to a new law Congress considers salutary." *Landgraf*, 511 U.S. at 266-68. And as explained above, to the extent that SAP invokes cases decided under administrative-law doctrines regarding reliance interests rather than any core due-process requirements underlying such doctrines, it errs.

compelled, to institute an IPR." *Mylan*, 989 F.3d at 1382. Whether IPR is instituted or not, SAP's substantive rights and obligations are unchanged. The institution decision neither invalidates the challenged patent claims nor ends a petitioner's duty not to infringe a valid patent. SAP believes that an IPR is the best procedure for it to challenge patent validity, but the institution or non-institution of IPR does not impose any substantive legal consequences on SAP's conduct—past, present, or future.

Nor can SAP articulate any reasonable reliance interests in the former Director's discretionary guidance. As an initial matter, to the extent SAP claims that it altered its litigation strategy in view of a potential IPR, it does not explain why such considerations would be relevant to a retroactivity analysis, which focuses on the "rights or obligations of the parties," rather than which "tribunal … is to hear the case." *Landgraf*, 511 U.S. at 274 (explaining that rules that "take[] away no substantive right but simply change[] the tribunal that is to hear the case" are not subject to the presumption against retroactivity).

Moreover, SAP points to no concrete ways in which it relied on the former Director's discretionary regime. The *Sotera* stipulation SAP filed in connection with its IPR petition was contingent on institution and has no ongoing effect given the USPTO's denial of institution. *See* Appx80. SAP points vaguely to its "invalidity contentions or strategic decisions" in litigation (Pet. 11, 13-14), but does not explain

any way in which those choices were prejudiced by the shift in the way USPTO weighs *Sotera* stipulations under the *Fintiv* analysis. Nor has SAP indicated how it would have specifically modified its invalidity contentions if the Rescission had occurred prior to the filing of its petitions. The fact that SAP now claims it took some unspecified action in reliance on the 2022 Memo does not implicate any constitutional interests.

Next, even if SAP did rely on the 2022 Memo, that reliance would not have been reasonable. SAP had no reasonable basis to assume that the 2022 Memo would remain in place indefinitely or would apply to any IPR petition it might file. The 2022 Memo itself does not purport to bind the agency permanently. It claimed only to be "INTERIM," and said it would only remain in effect "until further notice." Appx25; Appx33. Given these clear statements of temporal limitation in the 2022 Memo, any reliance on its continuation was entirely unjustified.

SAP's repeated references to the fact that the 2022 Memo describes itself as "binding agency guidance" are equally unavailing. Pet. 7-12. The 2022 Memo was "binding" on Director Vidal's subordinates, i.e., the PTAB; it did not purport to bind Vidal herself or a future Director. *See Apple*, 63 F.4th at 7 ("We have also made clear that any institution decision made by the Board as delegatee of the Director is subject to reversal by the Director."). Indeed, SAP nowhere explains its apparent

theory that one Director's articulation of how she intended to exercise discretion could bind her successor's discretion as well.

### 2.    SAP's separation-of powers argument has no merit.

SAP argues that the USPTO "has effectively rewritten [the] estoppel statute" and that, in doing so, it has violated the Constitution's separation of powers.  Pet. 16–20.  The argument fails for several reasons.  First, as discussed above, USPTO's alleged misapplication of the statute is not reviewable under § 314(d).  *See supra* II.

Second, SAP's contention that USPTO's discretionary-denial practices are inconsistent with the estoppel provision in 35 U.S.C. § 315(e) is incorrect on its own terms.  The statute leaves the agency free to deny institution for any constitutionally permissible reason.  *See, e.g.*, *Mylan*, 989 F.3d at 1382.  The USPTO could decline to institute IPR in view of a parallel patent challenge.  Such a choice would not conflict with the statute's estoppel provision, which requires petitioners to be *precluded* from raising certain challenges in future district court litigation after a completed IPR, but contains no requirements about petitioners being later *permitted* to raise any later challenges.  Nor does anything in the estoppel statute hint that the USPTO may not consider duplicative district-court litigation in deciding how to use its broad institution discretion.  On the contrary, it is manifestly appropriate for the USPTO to be concerned regarding "overlapping [IPR and district court] proceedings," which "raise[] self-evident issues of efficiency and interbranch

21

relations" that Congress entrusted the other "two branches to exercise their available discretion to address." *Vidal*, 63 F.4th at 8; *see Mylan*, 989 F.3d at 1382; *see also* 35 U.S.C. § 316(a)(4), (b) (directing the Director to consider "the relationship of [inter partes] review to other proceedings under this title"—such as district court litigation under 35 U.S.C. § 281—as well as "the integrity of the patent system" and "the efficient administration of the Office" in crafting IPR regulations). Considering the effect of duplicative patent challenges when deciding whether to institute discretionary proceedings serves the efficiency goals of the AIA. Indeed, this Court has already made clear that "the Director is free, as in this case, to determine that[,] for reasons of administrative efficiency, an IPR will not be instituted." *Mylan*, 989 F.3d at 1382.

Furthermore, SAP's § 315(e) argument turns on a simply incorrect assumption about the role that stipulations not to pursue district court arguments play both in institution and in later district court litigation. A petitioner's decision to file a *Sotera* stipulation is a litigation tactic with consequences, not "estoppel." If an IPR is instituted and a petitioner is bound by a stipulation they chose to offer, that outcome does not turn on (or expand) § 315(e) any more than any other litigation choice that may later prove binding. And if the petitioner does not ultimately receive institution, then the stipulation has no effect. Appx80 ("SAP stipulates that, should IPR be instituted . . . .").

Moreover, *Fintiv* calls for a "holistic [analysis] of whether efficiency and integrity of the system are best served by denying or instituting review." *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495, at *2 (P.T.A.B. Mar. 20, 2020) (precedential). A *Sotera* stipulation is a factor in the analysis, but its presence or absence is not determinative and no patent challenger is required to file such a stipulation to be eligible for IPR.

### B.    SAP has alternate means of relief.

The only harm SAP claims is the denial of one specific avenue of challenging patent claims via an IPR. Pet. 8, 18. In a hypothetical future case, a mandamus petitioner might contend that the USPTO's unconstitutional actions in the course of denying institution inflicted some independent harm by violating, e.g., the Equal Protection Clause. But here, SAP asserts no such harms, and is at base simply seeking a means to invalidate the challenged patent claims, urging that it has a "straightforward" invalidity case that it thinks should have been "virtually guaranteed" institution to press. Pet. 8, 18. Given the nature of those asserted harms, SAP has adequate means of relief, because it has at least two other avenues to challenge the patent claims. SAP remains "free to litigate the … patent claims' validity in its own district court case" even absent institution. *Mylan.*, 989 F.3d at

23

1383.[6]  SAP can also file a petition for ex parte reexamination.  SAP does not

mention these obvious alternative means of relief, much less carry its burden to show

that they are inadequate in light of the particular harms it asserts here.

SAP's only attempt to satisfy its burden is a single sentence arguing it cannot

directly appeal a decision denying institution.  Pet. 7.  The fact that the alternate

relief available is not of the type most preferred by a party does not make that relief

inadequate or support a grant of mandamus.  *See Fornaro v. James*, 416 F.3d 63, 69

(D.C. Cir. 2005); *Barnhart v. Devine*, 771 F.2d 1515, 1527 (D.C. Cir. 1985); *Bryan

v. McDonald*, 615 F. App'x 681, 684 (Fed. Cir. 2015).

### C.    Mandamus relief is inappropriate under the circumstances.

Finally, "even if the first two prerequisites [for mandamus] have been met,

the issuing court, in the exercise of its discretion, must be satisfied that the writ is

appropriate under the circumstances."  *Cheney*, 542 U.S. at 381.  For the reasons

discussed above, (1) any constitutionally protected interest SAP can identify is

marginal at best; (2) SAP had notice and an opportunity to be heard after the

rescission of the former Director's guidance; and (3) SAP may still pursue its

---

[6] As noted, the *Sotera* stipulation that SAP filed was conditioned on institution of its petitions for IPR.  Appx80 ("SAP stipulates that, should IPR be instituted . . . ."). Because the USPTO ultimately did not institute IPR, SAP has waived no unpatentability defense in the district court and thus remains free to seek relief by this "alternate means."  Similarly, there is no estoppel under 35 U.S.C. § 315(e) in the absence of "a final written decision."

invalidity defenses in the district court litigation and file an ex parte reexamination request.  Although SAP alleges that it had a "reliance interest" (Pet. 11) and that the Rescission resulted in "severe consequences for past actions SAP had taken" (Pet. 8), it identifies no impairment of any legal right as a result of the rescission and gestures only to some unspecified amount of delay and additional expense (beyond those necessitated by the district court proceedings) due to actions it took based on its (unwarranted) expectation that USPTO's new leadership would adhere to prior Director's guidance on a purely discretionary matter.  Pet. 11.  Indeed, SAP's attempt to force the current USPTO leadership to adhere to a prior Director's view of how best to exercise the broad discretion Congress afforded Directors in instituting IPRs and running the USPTO more generally raises serious political-accountability concerns.  Granting relief here would inappropriately hamstring the current Acting Director from responding to evolving conditions facing the agency.  *See United States v. Arthrex, Inc.*, 594 U.S. 1, 21 (2021).  Nothing in these circumstances indicates that this is the sort of extraordinary situation that could warrant this Court's issuance of an extraordinary writ.

## CONCLUSION

For the reasons above, this Court should deny SAP's Petitions for a Writ of Mandamus.

July 18, 2025

Respectfully submitted,

/s/ Peter J. Sawert

BRAD HINSHELWOOD
LAURA E. MYRON
Attorneys, Appellate Staff

AMY J. NELSON
Acting Solicitor

ROBERT J. MCMANUS
Acting Deputy Solicitor

Civil Division, Room 7228
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4819

PETER J. SAWERT
FAHD H. PATEL
Associate Solicitors

Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the United
States Patent and Trademark Office*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Fed. R. App. P. 21(d)(1) that the foregoing **ACTING DIRECTOR'S RESPONSE TO PETITIONS FOR MANDAMUS** complies with the type volume limitation.  The total number of words in the foregoing brief, excluding the table of contents and table of authorities, is 6,056 as measured by the word-processing software used to prepare this brief.

Dated: July 18, 2025                    Respectfully submitted,

   /s/ *Peter J. Sawert*
Peter J. Sawert
*Associate Solicitor*
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035